IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RUSSELL R.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:22-CV-885-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

    Plaintiff Russell R. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1381 *et seq.* For the following reasons, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal citation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff alleges disability based on hypothyroidism, rheumatoid arthritis, migraines, tear in the right hip, glaucoma, severe sleep apnea, PTSD, type II diabetes, and nerve damage in his

arms. Tr. 247.² At the time of his alleged onset date, he was 41 years old. Tr. 68. He has a GED and past relevant work as a flooring installer, which is a composite job that consists of the duties of a carpet layer (DOT 864.381-010, SVP 7), a heavy job, and a heavy floor installer (DOT 860.381-022, SVP 7), a medium job. Tr. 31.

Plaintiff applied for SSI on August 30, 2019, alleging an onset date of January 1, 2012. Tr. 20. His application was denied initially on April 17, 2020, and on reconsideration on July 9, 2020. Tr. 20. Plaintiff subsequently requested a hearing, which was held on May 1, 2021 before an Administrative Law Judge ("ALJ"). Tr. 39-74. Plaintiff appeared represented by counsel; VE Robert Simmons also testified. Tr. 39-74. On June 6, 2021, the ALJ issued a decision denying Plaintiff's claim. Tr. 17-38.

Plaintiff requested Appeals Council review, and on May 11, 2022, the Appeals Council denied review. Tr. 1. Plaintiff then sought review before this Court.³

## II.     Sequential Disability Process

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

² Citations to "Tr." are to the Administrative Record. (ECF 9).

³ The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

PAGE 3 – OPINION AND ORDER

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 30, 2019, the application date. Tr. 23.

At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, status post fusion at C6-7 and decompression at C4-7; degenerative disc disease of the lumbar spine; migraine without aura and without status migrainous; obesity; neurocognitive disorder; depressive disorder; and anxiety. Tr. 23.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. The ALJ then resolved that Plaintiff had the residual function capacity ("RFC") to perform less than the full range of light work, with the following limitations:

> He can stand and/or walk with normal breaks for four hours total and can sit with normal breaks for up to six hours total in an eight-hour workday; can occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds; can frequently balance, stoop, and kneel; can occasionally crouch and crawl; can frequently reach overhead and handle bilaterally; can never be exposed to hazards, such as unrestricted heights and dangerous moving machinery; can occasionally be exposed to pulmonary irritants; can frequently be exposed to moderate noise; can perform goal-oriented, but not assembly line work; can occasionally interact with coworkers, supervisors, and the general public; can adapt to routine changes in the workplace; and is limited to simple, unskilled work.

Tr. 25.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 31.

PAGE 5 – OPINION AND ORDER

At step five, the ALJ found that Plaintiff could perform other work that exists in substantial numbers in the national economy. Tr.31-32. The ALJ found that Plaintiff could perform the representative occupations of office helper (DOT 239.567-010), routing clerk (DOT 222.687-022), and labeler (DOT 229.587-018).

The ALJ therefore found that Plaintiff was not disabled since August 30, 2019, the date the application was filed. Tr. 32.

## DISCUSSION

Plaintiff alleges two errors: (1) the ALJ failed to provide clear and convincing reasons to discount his symptom testimony; (2); the ALJ erroneously found the medical opinions of Dr. William Trueblood, Ph.D., and Myra Dennis, FNP, unpersuasive.

### I.     Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v.*

*Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a Plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

A.   *Testimony*

At the hearing, Plaintiff described a variety of limitations. He testified that neck and back pain were frequently at an eight or nine out of ten. Tr. 61. It took him hours just to get out of bed, and some days, he could not get out of bed at all. *Id*. After waking, he would have to spend six to eight hours a day lying down. Tr. 63. He experienced "disabling" migraines once or twice weekly. Tr. 65. He experienced "mental fog" and sleep problems. Tr. 58. Plaintiff also wrote in his function report that he had to walk at half speed, it was difficult to sit, he could not be around other people, and he had trouble remembering things. Tr. 277, 282.

After summarizing Plaintiff's hearing testimony, the ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 27. In discounting the testimony, the ALJ relied

on the following rationales: that Plaintiff's testimony conflicts with the objective medical evidence in the record, that Plaintiff improved with treatment; and that the testimony conflicts with his daily activities. Plaintiff argues these are not clear and convincing reasons, supported by substantial evidence, for discounting his testimony. The Court addresses each rationale in turn.

### B.   Conflict with Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, available at 2017 WL 5180304, at *7-8. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

In the decision, the ALJ acknowledged that Plaintiff had some symptoms associated with his mental and physical impairments, and provided relevant limitations in Plaintiff's RFC to account for these symptoms. Tr. 27. The ALJ further concluded, however, that the physical and mental symptoms were not as severe as Plaintiff alleged, based on inconsistencies between his testimony and the objective medical evidence in the record. Tr. 26-29. For example, concerning Plaintiff's physical symptoms, the ALJ noted that in August 2019, around the time of Plaintiff's application date, Plaintiff's strength and soft touch testing were normal. Tr. 27 (citing Tr. 1383). The ALJ also catalogued the many medical visits that showed Plaintiff had regular, healthy range of motion. *Id.* (citing, inter alia, Tr. 393, 475, 519, 603). And, contrary to Plaintiff's testimony of constant and debilitating pain, Tr. 61, the ALJ noted he regularly presented in no discomfort, or in no apparent or acute distress. *See, e.g.*, Tr. 386, 387, 389, 393, 415, 426, 428. Overall, the ALJ

rationally found that Plaintiff had certain limitations that limited him to light work, but that his physical impairments were not as severe as he alleged at the hearing. Tr. 25-26, 28.

Regarding Plaintiff's mental impairments, the ALJ similarly found that the medical record did not fully support Plaintiff's symptom allegations. Tr. 28-29. At the hearing, Plaintiff testified about his episodes of mental fogginess, which last "three to four minutes," and that he will feel "really sluggish for the next three or four hours." Tr. 58. The ALJ initially noted that Plaintiff's baseline mental health screening reflected positive characteristics, and that Plaintiff was negative for depression or anxiety. *See, e.g.,* Tr. 357, 370, 475, 479. The ALJ also cited mental health evaluations in 2018 and 2021, which showed only mild neurocognitive limitations, and that memory, executive functioning, visuoconceptual skills, verbal skill, and processing speed all tested as normal or better than average. Tr. 28-29 (citing, e.g., Tr. 355-56). Ultimately, while the ALJ found Plaintiff had mental limitations which would restrict him to simple, unskilled work, no assembly-line paced work, only routine workplace changes, and only occasional interaction with others, these limitations were not as extreme as those characterized by Plaintiff. Tr. 23, 25-26, 28-29. The ALJ's decision to discount Plaintiff' symptom testimony because it conflicted with evidence in the medical record was therefore clear, convincing, and supported by substantial evidence.

    C.    *Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical

treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, the ALJ concluded that Plaintiff's chronic pain and headaches improved with treatment, which undermined his hearing testimony concerning the severity of those symptoms. Tr. 27-28. As noted above, an ALJ should consider the type and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). For example, the ALJ found Plaintiff responded positively to medication, noting that Plaintiff found migraine symptom relief using the prescription drug Imitrex, and Tylenol. Tr. 28, 1440, 1444, 1476. Neurology notes from early 2021 further described Plaintiff's headaches as "stable." Tr. 28. Likewise, the ALJ cited Plaintiff's physical therapy sessions, and their effect on reducing pain and improving sleep. Tr. 27, 1399. The ALJ reasonably concluded that Plaintiff's track record of improving with treatment undermined his testimony about disabling pain or headaches. This is therefore another clear and convincing reason, supported by substantial evidence, and the Court therefore upholds the decision to discount Plaintiff's testimony on the basis that his symptoms improved with treatment.

C.   *Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony about his physical symptoms because it was inconsistent with his reported daily activities. Tr. 21-22. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

At the hearing, Plaintiff testified to significant back, neck, and hip pain, Tr. 57-58, which the ALJ reasonably concluded conflicted with his other testimony about activities of daily living.

Even when they do not show transferable work skills, daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *see also Smartt*, 53 F.4th 499–500 (consideration of a claimant's ability "to engage[ ] in a somewhat normal level of daily activity," such as cooking, cleaning, doing laundry, and grocery shopping, supported discounting of the claimant's subjective symptom allegations). Here, the ALJ contrasted Plaintiff's reports of debilitating pain with evidence showing that Plaintiff did his own cooking and laundry, went to the grocery store, took short walks in the park, and socialized with many friends. Tr. 56-57. And in his function report, Plaintiff wrote that he took walks, cooked meals, did the dishes, washed some laundry, and socialized with others. Tr. 280-81. The ALJ rationally found that these activities, while limited, undermined Plaintiff's allegations of disability and supported the ALJ's decision to discount his allegations.[4]

## II.     Medical Evidence

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

---

[4] Even if the ALJ erred by discounting Plaintiff's symptom testimony as inconsistent with his activities of daily living, because the ALJ gave other sufficient reasons for finding Plaintiff not fully credible, any error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

A.      William Trueblood, Ph.D.

Dr. Trueblood evaluated Plaintiff on two separate occasions, on February 20, 2018, and on May 5, 2021. Tr.355, 2450. Most recently, Dr. Trueblood assessed Plaintiff with "moderate" impairment (possibly more), in concentration, planning and organization. Tr. 2517. His impairment in executive skills had significantly increased since 2018. *Id.* He assessed a "moderate' impairment in working memory with a "mild" increase since 2018. *Id.* He also assessed "mild to moderate" impairment in processing speed with a "mild to moderate" increase in degree of impairment. *Id.*

Dr. Trueblood also submitted a Mental Residual Functional Capacity Assessment. Tr. 2523. He assessed Plaintiff with Major Neurocognitive Disorder due to multiple etiologies. *Id.* He assessed "marked" impairment in ability to remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and perform activities within a schedule and maintain regular attendance. Tr. 2524. He also assessed "marked" impairment in Plaintiff's ability to work in coordination with or proximity to other and complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number of rest periods. Tr. 2459. Dr. Trueblood also assessed Plaintiff with "marked" limits in responding to changes in the work setting, traveling in unfamiliar places, setting realistic goals, and tolerating normal levels of stress. Tr. 2460. Dr. Trueblood concluded his assessment by opining that Plaintiff would be off-task twenty-percent of the workday and miss more than ten days of work each month because of his mental impairment. Tr. 2460.

The ALJ reasonably found Dr. Trueblood's medical opinions unpersuasive because they lacked support in the record. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—

and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford*, 950 F.3d at 1155. Addressing Dr. Trueblood's opinions in the Mental Residual Functional Capacity Assessment, the ALJ found Dr. Trueblood had only completed a check-box form, with only a brief narrative response on the first page. Tr. 29, 2457-61. Not only was the narrative response insufficient to support the opinions in the form below, but the ALJ noted the opinions clashed with Dr. Trueblood's other evaluations of Plaintiff. Tr. 29. In his May 5, 2021 evaluation, for example, Dr. Trueblood assessed Plaintiff with only moderate neurocognitive impairment overall, and moderate impairment reasonably in three discrete areas, with lesser impairment in others. Tr. 29, 2450. The ALJ therefore sufficiently considered the supportability of Dr. Trueblood's opinions when finding them unpersuasive.

The ALJ also reasonably considered that Dr. Trueblood's opinions were inconsistent with other record evidence when finding them unpersuasive. An opinion's persuasiveness is in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. Specifically, ALJ found that, aside from some mentions of compromised memory and focus, there was no evidence in the record of any marked mental limitations, and mental health impressions of Plaintiff were generally benign. Tr. 29. Plaintiff counters that Dr Trueblood's opinion is consistent with other evidence in the record, specifically the medical opinions of Nurse Mayra Dennis, Nurse Kathryn Krider, and PT Megan Rheeder. *See* Pl. Br, ECF No. 12 at 14. In fact, the ALJ considered Dr. Trueblood's opinion alongside these other medical records, and found Dr. Trueblood's opinions "overstated" by comparison. Tr. 29. The ALJ also found Dennis, Krider, and Reeder's medical opinions unpersuasive or only

PAGE 14 – OPINION AND ORDER

partially persuasive, so any consistency between them and Dr. Trueblood's opinions does not undermine the ALJ's conclusion. Ultimately, Plaintiff's arguments are an effort to have this Court re-weigh the evidence, which this Court may not do. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (noting "[w]e may not reweigh the evidence or substitute our judgment for that of the ALJ"). Because the ALJ reasonably considered the supportability and consistency of Dr. Trueblood's opinions, and the ALJ's conclusion was supported by substantial evidence, the Court will not disturb the ALJ's finding that Dr. Trueblood's opinion was unpersuasive.

B.   Mayra Dennis, FNP

Ms. Dennis originally evaluated Plaintiff's headaches on April 19, 2020. Tr. 1434-37. On March 29, 2021, she affirmed that her prior statement still applied. Tr. 1842. In both statements, Ms. Dennis referred to the medical findings on which she relied. She identified Plaintiff's diagnosis as post-traumatic headache related to dural tear and spinal fluid leak. Tr. 1910. She also identified nausea, vomiting, throbbing pain, inability to concentrate, mood changes, numbness, impaired sleep, pain worse with activity, and pain that causes avoidance of activity. *Id.* She also identified the impairment that could be expected to reasonably explain Plaintiff's headaches. Tr. 1845. She wrote in addition to history of head injury that Plaintiff had, "cervical spine trauma resulting in spinal cord damage seed on MRI with several surgeries, 'F&R' decompression and repair of dural tear and spinal fusion." *Id.*

The ALJ rejected Ms. Dennis's medical opinions as unpersuasive. Tr. 29. The ALJ found that Ms. Dennis's opinion relied on conclusory statements without any references to treatment notes, imaging, or testing. Tr. 30. Further, the ALJ found that treatment notes from April 20, 2020, show that Plaintiff was "doing quite well with headaches" and no changes in medications

PAGE 15 – OPINION AND ORDER

were needed. *Id.* In addition, the ALJ found that the medical records do not support unrelenting headaches which are not improved with treatment. *Id.*

The ALJ properly considered the supportability of Ms. Dennis's opinion when finding it unpersuasive. As noted above, an opinion's persuasiveness is a function of its support in the relevant objective medical evidence—that is, clinical signs and diagnostic findings. *See* 20 C.F.R. §§ 404.1502(c), (f), (g). *Ford*, 950 F.3d at 1155. Ms. Dennis opined Plaintiff had "constant" headaches, which could not be relieved by any measures, rendering him incapable of even low stress work or basic work activities, and would make him miss work 25 days per month. Tr. 1434-37, 1844-47. She also opined that he would have "difficulty sitting, standing or walking or any position for more than 10 minutes, and that his headache pain was "5-6 most days, up to 20/10 on 5+ days per month." *Id*. The ALJ noted that Ms. Dennis's opined limitations were not well-supported, containing only brief, summary descriptions, and no references to treatment notes or testing. Tr. 29-30. The ALJ also explained that despite the fact that Ms. Dennis opined that Plaintiff's headaches were intractable, she wrote in a treatment note the next day that Plaintiff was "doing quite well with headaches, except for the occipital region and high neck pain that correlates with Known C2-3 fact arthrosis … No med changes, follow up after consult interventions, or 4 months." Tr. 1440. The ALJ therefore sufficiently considered the supportability of Ms. Dennis's opinions when finding them unpersuasive

The ALJ further found Ms. Dennis's opinions were inconsistent with Plaintiff's medical record. Tr. 30. An opinion's persuasiveness is in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. Although Plaintiff's migraines were a severe impairment, the ALJ reasonably found the record would not support Ms. Dennis's opinion that they would cause him to be incapacitated for 25 days per

month. *Id.* (citing, e.g., Tr. 386, 415, where Plaintiff presented in no discomfort, or in no apparent or acute distress, and Tr. 1440, 1444, where Plaintiff responded positively to prescription and over the counter headache medications). For these reasons, the ALJ rationally found Ms. Dennis's opinion unpersuasive.

Plaintiff argues that the ALJ's finding was not supported by substantial evidence because Ms. Dennis relied on medical findings, diagnoses, MRI results, and surgical history for her opinion. Pl. Br., ECF No. 12 at 15-16. Plaintiff again points to the weight of the medical record, which he believes points in favor of finding Ms. Dennis's opinions persuasive. But again, it is not this Court's job to weigh the evidence, only to assess whether the ALJ's rationale is "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. The ALJ satisfied that standard, and sufficiently considered the supportability of Ms. Dennis's opinion when deciding it was unpersuasive. The Court will therefore affirm the ALJ's finding.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 5th day of June, 2023.

                                              /s/ ANDREW HALLMAN
                                              ANDREW HALLMAN
                                              United States Magistrate Judge